UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER,<br><br>  Plaintiff,<br><br>  v.<br><br>KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health & Human Services,<br><br>  Defendant. | Civil Action No. 08–1015 (CKK) |

**MEMORANDUM OPINION**[1]
(October 8, 2009)

This is an action for judicial review of a decision of the Provider Reimbursement Review Board ("PRRB" or "Board"), an entity within the United States Department of Health & Human Services ("HHS") whose decision in this case became final when Defendant Secretary of HHS (the "Secretary") did not act on it within 60 days. Plaintiff Alta Bates Summit Medical Center ("Alta Bates") seeks to set aside the PRRB's determination of the appropriate base year for calculating Medicare reimbursement costs for Alta Bates' geriatric psychiatric unit. Alta Bates and the Secretary have filed cross-motions for summary judgment. For the reasons explained below, the Court shall award summary judgment to the Secretary.

**I. BACKGROUND**

The essential facts underlying this action are not in dispute. Alta Bates is a not-for-profit corporation that operates an acute care hospital in Oakland, California (known at all relevant

---

[1] Pursuant to Rule 25(d), Kathleen Sebelius has been substituted for Michael O. Leavitt as the defendant in this action.

times as Summit Medical Center) and is certified by the Medicare program as a "provider of services" to Medicare patients. Pl.'s Stmt.[2], ¶¶ 1-2. In 1997, Alta Bates opened a geriatric inpatient psychiatric unit providing services to patients 65 years of age or older and patients 55 years of age or older who have disabilities recognized by Medicare. *Id.*, ¶ 4. Alta Bates had previously operated a Medicare-certified inpatient psychiatric unit that it acquired during a merger in 1992, but that unit ceased operations in June 1992, and Alta Bates subsequently removed psychiatric services from its state license. *Id.*, ¶¶ 10-12. Alta Bates did not have an active psychiatric unit again until March 1997. *Id.*, ¶ 12. The "new" geriatric psychiatric unit occupied the same building as the "old" unit that had closed.[3] Def.'s Stmt., ¶ 11.

Medicare certified Alta Bates' new psychiatric unit effective March 1, 1997 and classified it as a unit excluded from Medicare's Prospective Payment System ("PPS"). Pl.'s Stmt., ¶ 5. Although PPS replaced the "reasonable cost" reimbursement scheme that had led to skyrocketing costs, Congress excluded certain types of hospital units from PPS because of their atypical patient populations. *See Transitional Hospitals Corp. of La., Inc. v. Shalala*, 222 F.3d 1019, 1021 (D.C. Cir. 2000). Thus, inpatient psychiatric hospital units could be certified by Medicare

---

[2] The Court strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1 when resolving motions for summary judgment). *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case). The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [7] Order at 1 (Sept. 4, 2008). Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party. The Court shall also cite directly to evidence in the record, where appropriate.

[3] The Court recognizes that the parties dispute whether the terms "new," "old," and "closed" are appropriate, but the Court shall employ these terms for the sake of convenience and clarity.

as PPS-excluded units and be reimbursed on a reasonable cost basis.[4]  *Id.*  Under the reasonable cost regime, a provider is reimbursed for "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of need health services . . . ." 42 U.S.C. §§ 1395(f)(b)(1), 1395x(v)(1)(A).

The reasonable cost regime applicable to PPS-excluded psychiatric units was modified by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), which placed new limits on reasonable cost reimbursement.  *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 1010(a)(1), 96 Stat. 324, 331-35 (codified at 42 U.S.C. § 1395ww(b)).  Under TEFRA, hospitals are given financial incentives to keep costs below a "target amount" and penalized when costs exceeded that amount.  *See* 42 U.S.C. § 1395ww(b).  A hospital's TEFRA target amount is determined by the amount of allowable operating costs of inpatient hospital services during the year before TEFRA applied to the unit (known as the "base period" or "base year"), plus an annual percentage increase designed to adjust for inflation.  *See id.* § 1395ww(b)(3)(A).  Thus, the amount of costs incurred during the base year is critical to determining the reimbursement rates for hospital units that are excluded from PPS.

After Alta Bates acquired its "old" psychiatric unit in 1992, it reported that the unit was subject to a TEFRA target amount.  Def.'s Stmt., ¶ 7.[5]  The base year that had been established for that "old" unit was 1984.  *See* Def.'s Stmt., ¶ 15; Pl.'s Stmt., ¶ 8.  When Alta Bates submitted its first cost report for its new geriatric psychiatric facility in 1998, it reported the unit as a new

---

[4] Since the time period relevant to this dispute, HHS has promulgated regulations creating a PPS for inpatient psychiatric facilities.  *See generally* 42 C.F.R. Part 132, Subpart N.

[5] Alta Bates also indicated that this unit had been certified by Medicare effective March 1, 1992 (the date that Alta Bates acquired the unit).  Def.'s Stmt., ¶ 6.

unit excluded from PPS and subject to the cost-based reimbursement with no existing TEFRA target rate limit applied.  Pl.'s Stmt., ¶ 6.  When Alta Bates was initially audited by the Medicare fiscal intermediary[6] for that fiscal year, the auditors concluded that the proper TEFRA base year should be the fiscal year ending February 28, 1998.[7]  Pl.'s Stmt., ¶ 7.  However, the intermediary subsequently determined that the proper TEFRA base year for the new unit was 1984–the base year that had been established for the "old" unit previously operated by Alta Bates.  Pl.'s Stmt., ¶ 8.  By applying the base year cost of $4555.42 per discharge and updating it by annual percentage increases, the intermediary determined that the per discharge target amount was $7434.31, resulting in a reimbursement per discharge of $8177.74.  *Id.*, ¶¶ 14-15.  By contrast, the actual cost per Medicare discharge at Alta Bates' geriatric psychiatric unit was $16,108.41 for the 1998 cost year.  *Id.*, ¶ 14.  The intermediary took a similar approach in the 1999 cost year, resulting in a per discharge reimbursement of $10,534 compared to actual costs of $13,277.92 per discharge.  *Id.*, ¶ 16.

Alta Bates appealed the intermediary's adjustments to the Provider Reimbursement Review Board, a five-person panel within HHS that hears Medicare reimbursement disputes. The PRRB heard the appeal on July 17, 2007.  Def.'s Stmt., ¶ 17.  On April 15, 2008, the Board rendered a decision affirming the intermediary's decision to utilize 1984 as the TEFRA base year

---

[6] A fiscal intermediary (now referred to as a Medicare Administrative Contractor) is an organization that enters into an agreement with the Secretary to administer Medicare payments and perform other program functions.  *See* 42 U.S.C. §§ 1395h, 1395kk-1; 42 C.F.R. § 413.20(b).

[7] Alta Bates reports costs based on a fiscal year that ends on the last day of February. Accordingly, the first annual cost report for the new psychiatric unit was for the fiscal year ending February 28, 1998.

for Alta Bates' psychiatric unit. *Id.*, ¶ 19.  Alta Bates appealed to the Administrator of the Centers for Medicare & Medicaid Services (CMS), who declined to review the Board's decision. *Id.*, ¶ 23.  The Board's decision thus became the final decision of the Secretary.  *See* 42 U.S.C. § 1935oo(f)(1).  Alta Bates brought this action seeking judicial review of the Board's decision.

## II.  LEGAL STANDARD

When reviewing a decision of the PRRB, the court shall follow the standard of review set forth in the Administrative Procedure Act.  *See* 42 U.S.C. § 1395oo(f)(1).  Under that standard, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  "'The party challenging an agency's action as arbitrary and capricious bears the burden of proof.'" *City of Olmstead Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002) (quoting *Lomak Petroleum, Inc. v. Fed. Energy Regulatory Comm'n*, 206 F.3d 1193, 1198 (D.C. Cir. 2000)).  The Court need not find that the agency's decision is "'the only reasonable one, or even that it is the result [the Court] would have reached had the question arisen in the first instance in judicial proceedings.'"  *Am. Paper Inst., Inc. v. Am. Elec. Paper Serv. Corp.*, 461 U.S. 402, 422 (1983) (quoting *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 153)).  The Court's review is limited to the administrative record.  *Bloch v. Powell*, 227 F. Supp. 2d 25, 30 (D.D.C. 2002).

The court "must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).  The court's "task is not to decide which among several competing interpretations best serves the regulatory purpose." *Id.*  Rather, the agency's interpretation is controlling "unless it is plainly erroneous or

inconsistent with the regulation." *Id.* (citations omitted). Broad deference is all the more warranted where the regulation concerns a complex and technical regulatory program such as Medicare. *See id.* (applying deferential standard to the Secretary's construction of Medicare reimbursement issues before the PRRB).

### III.  DISCUSSION

At issue in this case is the PRRB's interpretation of two specific regulatory provisions that govern the determination of the proper base period for PPS-excluded hospital units under TEFRA. The first provision, 42 C.F.R. § 413.40(b)(1)(i) (hereafter "subsection (i)"), states that once a TEFRA target amount is established for a particular excluded unit, that target amount remains applicable to the unit despite intervening cost periods in which the unit is either not subject to TEFRA or not participating in the Medicare program. The second provision, 42 C.F.R. § 413.40(b)(1)(ii) (hereafter "subsection (ii)"), states that the base period for a "newly established excluded unit" is the first cost reporting period of at least 12 months following the new unit's certification to participate in Medicare. The PRRB determined that subsection (i) applies in this case because Alta Bates previously operated a psychiatric unit with an established TEFRA target amount, and that amount remains applicable despite the unit's nonparticipation in the Medicare program from 1992 to 1997. *See* Administrative Record ("AR") at 38 (PRRB Decision). Alta Bates contends that subsection (i) cannot apply because its geriatric psychiatric unit is an entirely new unit for which no TEFRA target amount has been established, and the Board therefore should have applied subsection (ii) instead. The question before the Court is thus whether the PRRB has properly interpreted these regulations and applied them correctly or appropriately to the facts of this case.

A.      **The PRRB's Interpretation of the Regulations Is Reasonable**

The parties each offer conflicting interpretations of the applicable regulations. However, under the APA's deferential standard of review, "[i]f the Secretary 'has given the text a reading that is linguistically possible and makes sense in light of the purposes of the [regulation],' her interpretation must prevail." *SSM Rehabilitation Inst. v. Shalala*, 68 F.3d 266, 269 (8th Cir. 1995) (quoting *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir. 1987)). Accordingly, the Court must determine whether the PRRB's interpretation of the regulations is plausible.

> The text of the relevant provisions is below:
>
> (i) The target amount established under this provision remains applicable to a hospital or excluded hospital unit, as described in §§ 412.25 through 412.30 of this chapter, despite intervening cost reporting periods during which the hospital or excluded hospital unit is not subject to the ceiling as a result of other provisions of the law or regulations, or nonparticipation in the Medicare program, unless the hospital or excluded hospital unit qualifies as a new hospital or excluded hospital unit under the provisions of paragraph (f) of this section.
>
> (ii) The base period for a newly established excluded unit is the first cost reporting period of at least 12 months following the unit's certification to participate in the Medicare program.

42 C.F.R. § 413.40(b)(1). Under subsection (i), a previously established TEFRA target amount remains in effect unless the hospital unit qualifies as "new" under 42 C.F.R. § 413.40(f), which provides a new provider exemption for certain hospitals that have been operating and providing services for less than two full years. *See* 42 C.F.R. § 413.40(f).[8] The parties appear to agree that

---

[8] Section 413.40(f) defines a "new hospital" as "a provider of hospital inpatient services that (A) [h]as operated as the type of hospital for which CMS granted it approval to participate in the Medicare program, under present or previous ownership (or both), for less than two full years; and (B) [h]as provided the type of hospital inpatient services for which CMS granted it approval to participate in the Medicare program, for less than 2 years." 42 C.F.R.

Alta Bates' psychiatric unit does not qualify for this new provider exemption, and Alta Bates did not request such an exemption. *See* Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. & Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 6-9; AR at 38 (PRRB's Decision). Instead, Alta Bates contends that its geriatric psychiatric unit falls squarely within the ambit of subsection (ii) as a "newly established excluded unit."

The regulations do not define the term "newly established excluded unit." Alta Bates argues that this phrase plainly and unambiguously encompasses its geriatric pyschiatric unit. In support of that proposition, Alta Bates relies on several facts that are undisputed in the record. First, Alta Bates closed its "old" unit shortly after acquiring it in 1992 and amended its state license so that it could no longer legally provide inpatient psychiatric services. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 16. Second, Alta Bates obtained a new Medicare certification for its geriatric psychiatric unit, effective March 1, 1997—something it contends it would not have had to do if it already had an existing unit. *See id.* at 17. Third, the geriatric psychiatric unit serves a much older patient population with different needs and higher costs than the old unit, such that it does not make sense to consider it to be the same unit. *Id.* at 26-33. Thus, Alta Bates maintains, the facts clearly show that the geriatric psychiatric unit is an altogether different unit than the one that Alta Bates briefly operated in 1992.

The Secretary does not dispute these facts but contends they are irrelevant. The Medicare

---

§ 413.40(f)(1)(i). Although paragraph (f) does not explicitly define the term "newly established unit," it states that "[a] newly established unit that is excluded from [PPS] . . . does not qualify for the [new provider] exemption . . . unless the unit is located in an acute care hospital that, if it were subject to the provisions of this section, would qualify as a new hospital under paragraph (f)(1)(i) of this section." *Id.* § 413.40(f)(1)(ii). Thus, to qualify under paragraph (f), a newly established excluded unit must be located in a hospital that has been operating and providing particular services for less than two years.

regulations for excluded hospital units do not distinguish between a "geriatric psychiatric" unit and an ordinary psychiatric unit. *See* 42 C.F.R. §§ 412.25, 412.27. According to the Secretary, Alta Bates' Medicare certification is merely part of an administrative mechanism to ensure compliance with Medicare standards. *See* Mem. of P. & A. in Supp. of Def.'s Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") at 19. Nothing in the Medicare regulations, the Secretary notes, equates obtaining Medicare certification with becoming a "newly established" unit. *See id.* at 18. Although the Secretary considers Alta Bates' decision to reapply for Medicare certification proper in this instance because it had to have its state license amended to authorize psychiatric services, the Secretary does not view the certification as relevant to the unit's status as a "newly established excluded unit." *Id.* at 19.

It is clear from subsection (i) that if Alta Bates had continued to operate its "old" psychiatric unit and simply withdrawn from the Medicare program between June 1992 and March 1997, the previously established TEFRA base year would remain in effect when it sought to rejoin the program. It is less clear from the text of the regulations whether the fact that a hospital completely closes an old unit and reopens a new one changes that result. The PRRB concluded that it does not, because otherwise a hospital could obtain a new base year (and thus increase its target amount) anytime it wanted simply by closing and reopening. AR at 38. Although the Board found in this case that "there is no evidence of intent to manipulate the base year rate," it held that Alta Bates' interpretation of the regulation would have "adverse policy implications." *Id.* The Board thus concluded that subsection (ii)'s definition of "newly established excluded unit" applies only to hospital units that have never had a TEFRA target

amount established.⁹  *Id.*  The Board further rejected Alta Bates' contention that subsection (i) cannot apply unless an excluded unit is in existence during the intervening cost reporting periods in which the TEFRA target amount did not apply.  *Id.*

The Court finds that the PRRB's interpretation of the regulations is reasonable.  Alta Bates argues that the phrase "newly established excluded unit" plainly refers to a unit that was not in existence prior to its Medicare certification.  However, as demonstrated by the facts of this case, the phrase is ambiguous.  While "newly established" might mean "newly certified," it could also be interpreted to apply only to a completely new facility, or, as the Board construed it, to apply only to units operated by providers who have never operated a similar excluded unit with an established TEFRA target amount.  Moreover, the phrase "nonparticipation in the Medicare program" is elastic enough to include nonparticipation due to a unit's closure and decertification.  The PRRB's interpretation is reasonable in light of the nature of the TEFRA program and the regulations as a whole, and the Court must defer to an agency's reasonable interpretation of ambiguous regulatory provisions.

Alta Bates claims that when the Board considered the "adverse policy implications" of Alta Bates' plain-language approach, *see* AR at 38, the Board surreptitiously (and impermissibly) rewrote the regulations through interpretation.  *See* Pl.'s Mem. at 24-25.  But the Board did not

---

⁹ The parties' arguments contain a certain degree of semantic circularity—Alta Bates argues that no TEFRA target amount was previously established for its new unit, while the Secretary counters that the unit is not "new" as a matter of law (even if as a factual matter it may be quite different than the unit that was previously operated).  The crux of the Board's interpretation of the regulations is that once a provider establishes an inpatient psychiatric unit excluded from PPS and obtains a TEFRA base year for that unit, there can never be a "newly established excluded unit" for purposes of subsection (ii) (unless the unit qualifies as new under 42 C.F.R. § 413.40(f)).  *See* AR at 38.

adopt an unreasonable construction of the regulations, nor did it contradict a prior agency explication. Indeed, the agency's ability to exercise judgment grounded in policy concerns is one of the primary rationales for deferring to an agency's interpretation of its own regulations. *See Thomas Jefferson Univ.*, 512 U.S. at 512.[10] Moreover, the Board's construction of subsection (i) is supported by the fact that the provision already includes one explicit exception—for units that qualify as new under paragraph (f)—whereas Alta Bates seeks to add an additional, implicit exception for units that were not in existence during the intervening cost reporting periods.[11]

Another factor supporting the agency's interpretation is the availability of alternative avenues of relief for Alta Bates. For example, under 42 C.F.R. § 413.40(i), Alta Bates can apply for a new base period that is "more representative of the reasonable and necessary cost of furnishing inpatient services . . . ." Although Alta Bates protests that obtaining a new base period would be difficult because of the documentation that would be required, *see* Pl.'s Opp'n at 21, the fact that the regulations contemplate such a base-year adjustment indicates that the Board's interpretation of subsection (i) is not unduly restrictive. The Secretary also cites other

---

[10] Alta Bates suggests that the policy concerns cited by the Board do not support its interpretation of the regulations because TEFRA limits are no longer applicable to inpatient psychiatric units. *See* Pl.'s Mem. at 25. But the Court is not permitted to substitute its own policy judgment for the agency's. *New York v. U.S. Envt'l Prot. Agency*, 413 F.3d 3, 18 (D.C. Cir. 2005).

[11] Alta Bates contends that because the Board did not explicitly refer to paragraph (f) in its written opinion, the Secretary cannot now make any arguments based on paragraph (f) to defend the Board's decision. *See* Pl.'s Opp'n at 6-7. However, although an agency's *post hoc* rationalizations are not entitled to deference, interpretations in the form of a legal brief are "still 'worthy' of deference despite the existence of litigation interests on the part of the agency." *United States v. Levin*, 496 F. Supp. 2d 116, 124 (D.D.C. 2007) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)). The positions advanced by the Secretary reflect the "agency's fair and considered judgment on the matter" and are thus entitled to deference. *See Nat'l Wildlife Fed'n v. Browner*, 127 F.3d 1126, 1129 (D.C. Cir. 1997) (citing *Auer*, 519 U.S. at 462).

adjustments that are available to Alta Bates, *see* Def.'s Mem. at 21, though Alta Bates disputes whether these provisions could provide meaningful relief, *see* Pl.'s Opp'n at 20. However, these adjustment provisions demonstrate that the regulations can accommodate changed circumstances without Alta Bates' preferred construction.

Alta Bates further contends that the Board's decision is arbitrary, capricious, and not supported by substantial evidence because the record clearly establishes that the "old" unit and "new" unit are factually distinct entities. *See* Pl.'s Mem. at 26-33. However, the Board did not make a factual finding that the old and new units were similar or the same. *See* AR at 38. Rather, the Board accepted the undisputed facts presented to it and determined that they fit within 42 C.F.R. § 413.40(b)(1)(i). *Id.* Accordingly, the Court cannot conclude that the Board's decision was arbitrary, capricious, or unsupported by substantial evidence. Furthermore, because the Secretary's interpretation of her own regulations "is neither 'plainly erroneous' nor 'inconsistent with the regulation,'" it commands the Court's deference. *Abington Crest Nursing & Rehab. Ctr. v. Sebelius*, 575 F.3d 717 (D.C. Cir. 2009) (quoting *Thomas Jefferson Univ.*, 512 U.S. at 512).

**B.     The PRRB's Interpretation of the Regulations Does Not Violate Medicare's Ban on Cross-Subsidization**

Alta Bates implies that the PRRB's interpretation of the regulations cannot be correct because it would violate Medicare's "anti-cross-subsidization" principle. *See* Pl.'s Mem. at 34-35. Medicare's authorizing statute provides that the Secretary's regulations shall:

> take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so

covered will not be borne by such insurance programs . . . .

42 U.S.C. § 1395x(v)(1)(A). Alta Bates contends that the Board's decision violates this principle by dramatically underfunding Alta Bates' geriatric psychiatric unit, such that the costs of treating Medicare patients will necessarily be subsidized by non-Medicare patients. The Secretary reads this provision as only permitting reimbursement for costs that are allowable under the Medicare program, and the Secretary's contention is that these costs are not allowable pursuant to the TEFRA restrictions. *See* Def.'s Mem. at 22 n.10. Otherwise, the Secretary maintains, any denial of reimbursement for costs exceeding TEFRA limits would violate the anti-cross-subsidization principle, defeating the entire purpose of TEFRA in combating rising costs. The Court agrees, and because the Secretary's construction of the TEFRA statute and regulations is entitled to deference, the Court finds that the Board's decision does not violate Medicare's ban on cross-subsidization.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY Plaintiff's [13] Motion for Summary Judgment and GRANT Defendant's [18] Cross-Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

Date:   October 8, 2009

                                              /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge